# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR407-122 |
| ) | |
| SHAWN HAMILTON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant Shawn Hamilton has filed a motion to suppress evidence seized during the warrantless search of his vehicle following a traffic stop conducted by Savannah police officers. Doc. 26. After the Court held an evidentiary hearing on August 16, 2007, both parties submitted post-hearing briefs. Docs. 31, 32. For the reasons that follow, the motion to suppress should be DENIED.

## I. BACKGROUND[1]

---

[1]The relevant facts are drawn from the testimony of Savannah–Chatham Metropolitan Police Officers Judd West and Sylvester Brown, the only witnesses to testify at the suppression hearing. These officers gave consistent and credible accounts of the traffic stop and subsequent search of the vehicle. Defendant refers in his post-hearing brief to an affidavit that he tendered prior to the suppression hearing in

At approximately 7:37 p.m. on October 13, 2007, Officer Sylvester Brown was traveling east on 31st Street when he and his passenger and shift partner, Officer Judd West, met a Mercury Grand Marquis traveling in the opposite direction. Officer West observed the Mercury turn right onto Barnard Street, travel half a block towards Anderson Street, then stop and proceed to back down Barnard Street until it reached 31st Street. The vehicle then backed out onto 31st Street and resumed its westbound travel. Officer West alerted Officer Brown of his observations and instructed Brown to effect a traffic stop of the Mercury. When the vehicle stopped in response to the patrol car's emergency lights and siren, Officer West

---

compliance with LCrR 12 (which requires that a defendant's factual assertions in a suppression motion be sworn to or supported by record references). See United States v. Richardson, 764 F.2d 1514, 1526-27 (11th Cir. 1985) (a defendant is not entitled to an evidentiary hearing on his suppression motion unless he alleges facts that, if proved, would require the grant of relief). As the Court explained at that hearing, the sole function of such an affidavit is to demonstrate a defendant's *entitlement* to an evidentiary hearing, not to rebut or counter testimony introduced at that hearing. A defendant who wishes to dispute evidence offered by the government at the suppression hearing may not hope to avoid the rigors of cross-examination by the simple expedient of tendering his testimony in the form of an affidavit. See United States v. Nazario-Rivera, 2006 WL 2983046 at *4 (D. Kan. October 17, 2006) ("An affidavit or declaration cannot be used in a suppression hearing as a 'thinly veiled attempt by the defendant to present his position and avoid the rigors of cross-examination.'"). Thus, references to defendant's affidavit as a supplement or counterpoint to the testimony of the government's witnesses—who *were* subjected to a thorough cross-examination—is not proper. Defendant elected not to testify at the suppression hearing, thus shielding himself from the crucible of cross-examination. Defendant must now accept the consequences of that strategic decision.

approached the driver's side of the vehicle while Brown took position on the passenger's side. The vehicle was driven by defendant Hamilton and had a single passenger, Tarik Bentley, who is a codefendant in the case. As Officer West tapped on the driver's side window and requested to speak with defendant, he observed defendant manipulating something next to his right leg in an apparent attempt to conceal the object. Only after the officer tapped on the window a second time did defendant roll down the car window. Once the window was lowered, Officer West detected the strong odor of burnt marijuana inside the vehicle. (Officer Brown also smelled the marijuana odor from the passenger side of the vehicle.) When Officer West asked if defendant had smoked any marijuana, defendant admitted that he and the passenger had smoked some earlier. Officer West then asked defendant if he could search the vehicle, and defendant responded that "there is nothing in here, you can search it." After instructing defendant to exit the vehicle, Officer West again observed defendant appear to conceal something next to his right leg.

While Officer West spoke with the driver, Officer Brown instructed the passenger to exit the vehicle and then had to subdue Bentley when he

attempted to flee on foot. During this altercation, a clear bag containing ecstasy and crack cocaine fell from the waistband of the passenger's pants. A patdown of the passenger yielded a 9 millimeter pistol. After frisking defendant Hamilton, Officer West entered the vehicle and recovered a .45 caliber semi-automatic pistol next to the driver's seat. Upon learning that defendant was a convicted felon and that the pistol was stolen, Officer West placed defendant under arrest.

Defendant's affidavit contradicts the officers' testimony in several important particulars. Although defendant admitted that he backed his vehicle down Barnard Street, he denied that there was any traffic on the street, denied that he told Officer West that he had smoked marijuana earlier, and denied that he gave consent to search his vehicle. Doc. 27. Even if this affidavit had any evidentiary value,[2] the Court would give it little weight in light of the highly credible testimony offered by the two officers, who were both exposed to the cleansing fire of cross–examination and whose demeanor, responsiveness to questions, and candor was observed

---

[2]Defendant's affidavit states that it is "offered for the limited purpose of complying with the LCrR 12.1" and to establish his standing to contest the search. Doc. 27, ¶ 2.

4

by the Court during the suppression hearing.

## II. ANALYSIS

Defendant first argues that no probable cause existed to justify the stop of his vehicle because he did not commit a traffic violation. Doc. 31 (Def.'s post-hearing br.). "[A] police office may stop a vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)). While the Fourth Amendment prohibits unreasonable searches and seizures, "a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996).

In this instance, the officers stopped defendant after observing him reverse his direction of travel by backing his vehicle down a city street for half a block and then into an intersecting street. Georgia law provides that "[a] driver shall not back a vehicle unless such movement can be made with

safety and without interfering with other traffic." O.C.G.A. § 40-6-240(a). Defendant contends that he did not violate this statute since there was no testimony that he endangered any pedestrians, hit any of the parked cars in the area, or came "into physical contact with the police unit while backing up." Doc. 31, at 2-3. The Georgia motor vehicle code, however, does not require an actual collision with another vehicle or pedestrian in order to charge a motorist with improper backing. Rather, the traffic code prohibits unsafe backing whether or not the maneuver results in an accident or injury. See Collier v. State, 639 S.E.2d 405, 408 (Ga. App. 2006). Under defendant's interpretation of the Georgia statute, a motorist could drive backward for miles as long as there was no vehicular or pedestrian traffic in his way. This overlooks the obvious point that driving a vehicle in reverse for a considerable distance is an inherently unsafe practice, for as all drivers know, it is both more difficult to control a vehicle and to spot potential hazards when driving in reverse than when going forward. The officers testified that there was light traffic and parked cars along the street where defendant backed his vehicle. While defendant did not collide with any of these vehicles, the officers certainly had probable

cause to believe that he was backing his vehicle in an unsafe manner in violation of Georgia law. The officers were therefore perfectly justified in conducting a traffic stop of defendant's vehicle.

Defendant next contends that even if the traffic stop was lawful, the officers acted improperly in searching his vehicle. Doc. 31. The evidence adduced at the suppression hearing, however, establishes that defendant consented to the search of his vehicle.[3] A search made without the benefit of a warrant or even probable cause is nevertheless proper under the Fourth Amendment when conducted pursuant to the property owner's voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Florida v. Jimeno, 500 U.S. 248, 250-51 (1991) ("it is no doubt reasonable for the police to conduct a search once they have been permitted to do so."); United States v. Dunkley, 911 F.2d 522, 525 (11th Cir. 1990). Such searches are not only constitutionally permissible but are a "wholly legitimate aspect of effective police activity." Schneckloth, 412 U.S. at 228. Indeed, society "has a real interest in encouraging consent," and nothing in

---

[3] While defendant stated in his affidavit that he did not consent to a search of his vehicle, the Court credits Officer West's testimony that he asked for and obtained defendant's consent to search.

the Constitution discourages citizens from giving such consent. Id. at 243. Since defendant consented to a search of his vehicle, he cannot complain that the officers lacked probable cause to proceed with the search.

The officers, however, did not require defendant's consent in order to search his vehicle. Once defendant complied with Officer West's lawful instruction to roll down his car window, the officer smelled a strong odor of burnt marijuana. Even Officer Brown, who was standing on the passenger's side of the vehicle, detected the marijuana odor. In the context of automobile searches, it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982). "At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed, namely . . . the possession of contraband, arose." Id. See United States v. Rojas, 538 F.2d 670 (5th Cir. 1976) (odor of marijuana emanating from vehicle stopped at Border Patrol checkpoint sufficient to establish probable cause to search the vehicle); see also United States v. Griffith, 109 F.3d 706, 708 (11th Cir. 1997) (odor of marijuana detected during traffic stop furnished reasonable suspicion justifying further

investigation of suspect). And even if the officer lacked probable cause, he certainly had reasonable grounds to believe that the defendant presented a threat to his safety, both because Officer West had observed defendant trying to conceal some object next to the driver's seat and because Officer Brown had seized a pistol and drugs from the passenger as he tried to flee the scene. These events would lead any reasonable officer to suspect that defendant posed a potential danger, and thus Officer West was entitled to both frisk the defendant and search the area next to the driver's seat for a possible weapon. Michigan v. Long, 463 U.S. 1032, 1049 (1983) (officer conducting a traffic stop who has reason to believe the driver is dangerous may not only frisk the driver but also search areas of the passenger compartment from which the driver might gain access to a weapon); United States v. Neely, 217 Fed. Appx. 849, 851 (11th Cir. 2007) (unpublished opinion) (officer entitled to search vehicle to ensure his own safety where suspect repeatedly reached under his seat); United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) ("It is well established that officers conducting a traffic stop may 'take such steps as [are] reasonably necessary to protect their personal safety' . . . includ[ing] conducting a protective

search of the driver, the passengers, and the vehicle.") (citations omitted)).

## III. CONCLUSION

The evidence establishes that the initial stop of defendant's vehicle was lawful since the officers reasonably believed that defendant was operating his vehicle in violation of Georgia law. During the course of the traffic stop, defendant consented to a search of his vehicle. In addition, the officers developed probable cause to believe that defendant was engaged in criminal activity and that he posed a threat to their safety, thus justifying a search of the passenger compartment of the vehicle. Defendant's motion to suppress should therefore be DENIED.

**SO REPORTED AND RECOMMENDED** this 31st day of **August, 2007.**

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA