# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

SHAWN HAMILTON,        )
                                   )
      Movant,          )
                                   )
v.                      )    Case No.    CV409-102
                                 )                   CR407-122
                                 )
UNITED STATES OF AMERICA,   )
                                 )
      Respondent.[1]   )

## REPORT AND RECOMMENDATION

Shawn Hamilton moves over the government's opposition for 28 U.S.C. § 2255 relief. (Doc. 1.)[2] For the following reasons, his motion should be **DENIED**.

## I. BACKGROUND

Hamilton was sentenced to 157 months' imprisonment after a jury found him guilty of possessing with intent to distribute crack cocaine and

---

[1] Hamilton attacks a federal conviction but submitted a 28 U.S.C. § 2254 state habeas corpus form petition that named the Chatham County Sheriff and Georgia Attorney General as respondents. (Doc. 1.) In an earlier order, the Court construed the filing as a motion brought pursuant to § 2255 and substituted the United States as the proper respondent. (Doc. 2.)

[2] "Doc." citations are to the docket in movant's civil case, CV409-102. "Cr. doc." refers to documents filed under movant's criminal case, CR407-122.

ecstasy, possessing a firearm by a convicted felon, and carrying a firearm in relation to a drug trafficking crime. (Cr. docs. 1 & 53.) After unsuccessfully appealing his conviction, *United States v. Hamilton*, 299 F. App'x 878 (11th Cir. 2008) (per curiam), he filed the present § 2255 motion asserting four grounds for relief:

(1) defense counsel was ineffective for: (a) failing to contend that the drugs and guns found in his vehicle were in his passenger/co-defendant's possession; (b) failing to raise a claim based upon a typographical error in Officer B. Waiter's incident report; (c) attempting to withdraw from the case; and (d) failing to file for a judgment of acquittal;

(2) the arresting officers did not have probable cause justifying the stop and search of his vehicle;

(3) the evidence supporting the firearm convictions was insufficient; and

(4) the evidence supporting the drug conviction was insufficient.

(Doc. 1 at 6-7.)

## II. <u>ANALYSIS</u>

Grounds 2-4 were considered and rejected upon direct appeal. Specifically, Hamilton argued on appeal that:

(1) the police lacked probable cause to execute the traffic stop which led to his arrest; (2) the subsequent search of his vehicle was illegal; (3) the evidence supporting his conviction for possession with intent

to distribute cocaine and ecstasy was insufficient; and (4) the evidence supporting his firearm convictions was likewise insufficient.

*Hamilton*, 299 F. App'x at 880. The appeals court found that probable cause supported the initial traffic stop since the arresting officers witnessed Hamilton illegally back his vehicle in violation of O.C.G.A. § 40-6-240(a).[3] *Hamilton*, 299 F. App'x at 882. Next, it held that the vehicle search was consensual *and* was supported by probable cause:

> Both [arresting officers] smelled a strong odor of burnt marijuana as soon as Hamilton rolled down his window. We have held that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982). In addition, [Officer] West witnessed Hamilton attempt to conceal what later turned out to be a .45 caliber pistol in the cushion of the driver's seat and [Officer] Brown was forced to physically detain [Bentley] as he attempted to flee.

*Id.* Finally, it found that the evidence presented at trial was sufficient to support the jury's finding that the government proved each element of the drug and firearm convictions beyond a reasonable doubt, largely based upon the testimony of his passenger, Bentley, along with the arresting and later-responding officers. *Id.* at 883, 884.

---

[3] O.C.G.A. § 40-6-240(a) ("A driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic.").

Since the claims were raised and rejected on appeal, Hamilton cannot relitigate them here absent extraordinary circumstances. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Marshek v. United States*, 2006 WL 2036996 at *7 (S.D. Ga. July 18, 2006) (unpublished); *see Thomas v. United States*, ___ F.3d ___, 2009 WL 1856048 at *3 (11th Cir. June 30, 2009) ("As a threshold matter, we have not yet applied the law of the case doctrine *by name* in the context of a § 2255 motion, as a bar to a claim first raised on direct appeal. Nonetheless, we have held that '[t]he district court is not required to consider claims of error that were raised and disposed of on direct appeal.' *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)." (emphasis in original)). Hamilton does not allege any extraordinary circumstances justifying reconsideration of these claims. Instead, he simply contends that there was insufficient corroborating evidence showing that he interfered with other traffic when he backed his vehicle and that he possessed the guns and drugs. (Doc. 1 at 6.) Consequently, grounds 2-4 offer no basis for relief.

Turning to ground 1, Hamilton asserts that he was denied the effective assistance of counsel. (*Id.* at 6.) In *Strickland v. Washington*,

466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008)

(quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Hamilton contends that his trial attorney, Francesca Rehal, was ineffective for (1) failing to argue that the drugs and guns underlying his convictions were all in his codefendant's possession, (2) failing to challenge the testifying police officer's correction of a typographical error in his incident report, (3) attempting to withdraw from the case, and (4) failing to file a motion for judgment of acquittal. (Doc. 1 at 6.)

Hamilton's claim regarding his possession of the drugs and guns is far from a model of clarity. He simply states that "[c]ounsel did not raise

the claims of drugs being found in co-defendant['s] pocket [or] the claim of both guns being found in co-defendant['s] possession." (*Id.*) Hamilton does not specify the time and place where Rehal should have raised such a claim. In any event, she did raise the issue during trial and on appeal.

During her cross-examination of Officer West, Rehal brought out that Hamilton had no drugs or firearms on his person at the time he was searched:

Q: And you searched — when did you search Mr. Hamilton?

A: After he was placed in handcuffs incident to arrest.

Q: And you say that you found $1,305 on him.

A: Yes, ma'am.

Q: Now, there can be various reasons he would have cash on him; couldn't there?

A: There could be, ma'am.

Q: Okay. But that was the only thing you found on his person; right?

A: To my knowledge, yes, ma'am.

Q: And you are the one that searched him.

A: Yes, ma'am

(Cr. doc. 84 at 29-30.)[4]  Rehal also raised the issue before the Eleventh

Circuit, which found that the evidence was still sufficient to sustain a

conviction.  *Hamilton*, 299 F. App'x at 883-84.

---

[4]  Indeed, the jury was well aware that Hamilton did not have the drugs or a firearm on his person at the time of the vehicle stop and subsequent search.  Bentley, his co-defendant, testified against Hamilton at trial.  He admitted that he had possession of the drugs just after the stop.  (Cr. doc. 84 at 52.)  The Taurus .45 caliber pistol underlying the gun convictions was found stuffed between the Hamilton's seat and the center console.  (*Id.* at 16.)  Other testimony linked the drugs and Taurus pistol to Hamilton.  For instance, Bentley testified that Hamilton handed him the drugs to hide them.  (*Id.* at 52.)  Additionally, Officer West testified that he saw Hamilton trying to hide the weapon while approaching the vehicle.  (*Id.* at 16.)  Bentley corroborated West's testimony about the firearm:

Q:  Did Mr. Hamilton, did he also have a weapon with him on October 13th, 2006?

A:  I didn't see it at the time.   I didn't know until we got to the police station.

Q:  How did you know then?

A:  He had let know, he had wanted me to take the charge for him.

Q:  He said that to you?

A:  Yes, sir.

Q:  What did you understand him to mean by you take the charge?

A:  That would mean that I claim the gun.

Q:  And did you do that?

A:  Yes, I tried to.

Q:  You tried to tell the police that both of those weapons were yours.   Is that correct?

Since the possession issue underlying the current claim of ineffectiveness *was* raised and explored by counsel at trial and on appeal, the Court perceives no deficient performance on Rehal's part.[5] The possession issue was before the jury and the Court of Appeals, all of which rejected it.

Moreover, Hamilton appears to assume that his conviction was dependent upon his *actual* possession of the drugs and guns at the time of the arrest. But the law is well settled that a defendant need not have the items on his person to possess them. His *constructive* possession of illegal contraband is sufficient. *See United States v. Nettles*, 244 F. App'x 291, 293 (11th Cir. 2007) ("constructive possession . . . is proven 'by showing

---

A:    Yes, sir.

Q:    Had you ever seen this weapon which has been marked 2A? Was that in fact your weapon or Mr. Hamilton's weapon?

A:    Mr. Hamilton's

(*Id.* at 54-55.)

[5] Perhaps Hamilton believes that Rehal failed to properly flesh out the issue during his motion to suppress or at some other time during the proceedings (i.e., other than during trial or on appeal), but he has not offered any reason to believe that the assertion of the claim at such a time would have been reasonably likely to favorably impact his case.

ownership or dominion and control over the drugs or over the premises on which the drugs are concealed'"); *United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir. 1999) (same).   Here, there was overwhelming evidence of constructive possession.   *See* note 4 *supra*.   Accordingly, Hamilton would be hard-pressed to show that he was prejudiced even if Rehal failed to raise the issue at the appropriate time.

Next, Hamilton contends that counsel was ineffective for failing to raise some sort of claim regarding Officer B. Waiter's assertion at trial that he made certain typographical errors in his initial police report. (Doc. 1 at 6.)   Defense counsel discussed the issue at trial:

Q:  Okay.   And where was — it was the Beretta that was on the passenger?

A:  Yes.   Actually, it was — the 9-millimeter was on the passenger.

Q:  Okay.   And you observed this.

A:  Yes.

Q:  Okay.   Did you recognize it as a Beretta at that point in time?

A:  I actually [had it] in my report as being the .45.   But that was just a typo.   It was the 9-millimeter.

Q:  You are saying what is in your report was a typo?

A: Yeah.   My report, I actually have that it was a .45 caliber pistol [that] was recovered from the passenger.

Q: But it was the [9 mm] Beretta that was recovered [from Bentley].

A: Exactly.

(Cr. doc. 84 at 65.)

Hamilton does not explain what claim Rehal should have raised regarding the typographical error or how it would have impacted his case. On that basis alone, the claim should be discarded.   *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the *Strickland* test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations). Further, counsel made sure that the jury was aware of the typo, and

defendant has not demonstrated what else she should have done regarding this minor error in the officer's police report.

Officer Waiter's corrected testimony was supported by the testimony of every other government witness who testified regarding the gun charges. (Cr. doc. 84 at 16-18 (Officer West); *id.* at 38 (Officer Brown); *id.* at 53-54, 57 (Bentley).) Having exploited the inconsistency in the police report at trial, Rehal acted reasonably under the circumstances, but based upon the record, there was no likelihood that further belaboring the issue at trial or on appeal would have achieved any beneficial results.

In Hamilton's final two ineffective assistance of counsel enumerations, he contends that counsel was ineffective based upon her motion to withdraw from the case and for failing to file a motion for judgment of acquittal. (Doc. 1 at 6.) Again, Hamilton has not explained why these facts support a claim of ineffectiveness. For that matter, it is not clear whether he believes Rehal was ineffective for filing a motion to withdraw or for failing to raise additional issues that might have warranted the Court's granting of that motion.

Rehal filed the motion to withdraw at Hamilton's insistence, because he hoped to raise claims of ineffective assistance on appeal. (Cr. doc. 64.) This Court conducted a hearing on the matter and explained to Hamilton that it is the normal practice for defendants to raise any claims of ineffectiveness in a § 2255 motion, since the Eleventh Circuit generally does not entertain such issues on direct appeal. (Cr. doc. 72.) Based upon that advice, Hamilton consented to Rehal's continued representation. He does not presently explain how Rehal's actions amounted to deficient performance, and the Court cannot discern any deficiency based upon the record. Nor is there any prejudice on these facts, as presented.

Similarly, Hamilton has not explained how Rehal's failure to file a motion for judgment of acquittal [6] was unreasonably deficient or prejudicial. Hamilton himself filed an untimely pro se motion for judgment of acquittal, which was denied based upon the law of the case doctrine, since he re-raised claims already decided and rejected by the Court of Appeals. (Cr. doc. 92.) The record shows that had Rehal filed

---

[6] It is unclear whether he is referring to a pre- or post-judgment motion for judgment of acquittal.

such a motion prior to the appeal based upon the same "I didn't possess the evidence" arguments Hamilton has reasserted at every level of this proceeding, it would have failed for the same reasons explained by the Eleventh Circuit on appeal. Consequently, Hamilton has not shown that Rehal's refusal to file such a motion was an unsound decision under the circumstances Nor was Hamilton prejudiced by counsel's failure to file the motion: The outcome of the proceedings were not likely to have changed based upon the largely unrebutted evidence of record.[7]

## III.  CONCLUSION

For all of the reasons explained above, Hamilton's § 2255 motion (doc. 1) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this __17th__ day of September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

[7] Hamilton has not suggested that he had any other arguments likely to succeed on a timely-filed motion for judgment of acquittal.